```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TANEISHA THOMAS, on behalf of K.Y.,                         :
                                                            :   **MEMORANDUM**
                                         Plaintiff,         :   **DECISION AND ORDER**
                                                            :
                   - against -                              :   15 Civ. 3348 (BMC)
                                                            :
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                                         Defendant.         :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff's mother seeks review of a decision of the Commissioner of Social Security denying her application for benefits on behalf of her daughter K.Y. After a hearing on February 3, 2014, at which time plaintiff was 7 years old, an Administrative Law Judge ("ALJ") found that although plaintiff had severe impairments – attention deficit hyperactivity disorder ("ADHD") and a learning disability – they did not meet or equal the "Listing of Impairments" at 20 C.F.R. §§ 416.924 and 416.926, and they were also not functionally equivalent. He therefore found that plaintiff was not disabled. This minor has spent considerable time in homeless shelters. Not surprisingly, no medical professional has taken a really good look at her so that her functional capacity can be assessed, and the reports from her teachers demonstrate little ability to focus. I am therefore remanding the case for additional medical and psychological evaluations so that the extent of her impairment can be fully understood.

# BACKGROUND

## I.     Medical Evidence

Plaintiff's mother filed an application for supplemental security income ("SSI") on her behalf on August 31, 2012.  She alleged that her daughter has been disabled since October 29, 2010.

Plaintiff's medical record in this case begins on June 30, 2010, when she was a little over three years old.  Sandra Olin, a speech language pathologist, performed a speech and language evaluation.  She determined that plaintiff demonstrated below average expressive skills and had delayed speech intelligibility.  Olin recommended speech and language therapy.

Less than two years later, when plaintiff was in kindergarten, Marie Laude completed a Social History Evaluation.  The Evaluation was undertaken in response to the request of plaintiff's mother that her daughter receive special education services due to learning difficulties.  Laude noted that plaintiff had reached all developmental milestones, except for speech and language.  Laude observed plaintiff in a regular classroom setting in March, 2012.  She was able to transition smoothly, sit still in her seat, and engage with the lesson plan.  She interacted with her peer group appropriately.  Academically, however, she was having difficulties.  She had no relationship with letters and sounds.  She was not retaining new information learned in class.

That same month, plaintiff underwent a speech/language evaluation.  The evaluation reflected that plaintiff had an average to high average range of functioning for speech and language.

A psychoeducational evaluation was performed in June, 2012, by Erick Pierre, whose training and background to administer the evaluation is not described in the record.  The

evaluator noted that plaintiff had been absent 47 days that year, and stated that there was a positive correlation between her attendance and academic performance. Plaintiff's intellectual development was not particularly concerning, falling within the average range on most measures, including nonverbal cognitive functioning, global cognitive functioning, verbal IQ, overall reasoning, fluid reasoning, the domain of knowledge, and quantitative reasoning. However, on areas requiring sustained focus, such as in the areas of verbal knowledge, letter-word identification, initial passage comprehension, mathematics reasoning, math fluency, penmanship and syntax, and word recognition skills, plaintiff performed below average. In reading, she did not know the meaning of any words and her poor math skills were attributed to her difficulty concentrating and slow processing speed. At the end of the 2011-2012 school year, plaintiff had average grades in almost all of her subjects, but she performed below grade level on all achievement tests. She had been absent a total of 49 days and late 37 days.

In August, 2012, a pediatrician referred plaintiff to Brookdale Hospital outpatient psychiatric services for hyperactivity.

In October, 2012, Dr. Richard King, a psychiatrist, performed a consultative examination of plaintiff. She was in first grade and had been in special education classes since pre-kindergarten. Plaintiff's mother told him that plaintiff crawled around on the floor in class and that when she was at home she did not sit still and ran around the apartment jumping and screaming. During the examination, plaintiff had a hard time sitting still. Her speech was coherent and relevant, but below age appropriate level. Dr. King opined that plaintiff's "intellectual functioning is beneath chronological age. She could not do the alphabet. She could not do certain primary colors. She could count to three but not higher. She could not spell cat." During plaintiff's interview with Dr. King she was "frequently screeching," and he noted that

structure needed to be provided for plaintiff. Dr. King diagnosed ADHD and learning disorder. He opined that plaintiff demonstrated beneath age appropriate behavior at home, at school, and with her peers. He thought she might benefit from psychiatric treatment.

In November, 2012, Dr. M. Malik, a state agency pediatric medical consultant, completed a Childhood Disability Evaluation Form. This appears to have been a records-only review; it does not appear that Dr. Malik ever examined plaintiff. He determined plaintiff had impairments that did not meet or equal the Listings. He found plaintiff had a marked limitation in the domain of attending and completing tasks; a less than marked limitation in acquiring and using information, interacting and relating with others, and caring for herself. He found no limitations in any other domains. He noted plaintiff suffered from significant hyperactivity and distractibility.

That same month, Shari Stein-Ballow performed an occupational therapy evaluation. Plaintiff was demonstrating vision and visual motor concerns. These concerns presented in a number of ways: plaintiff was having difficulty following multistep directions, paying attention in the classroom, questionable vision tracking skills, an awkward pencil grasp, and handwriting weakness. Plaintiff was observed in the classroom with her head on her desk or otherwise looking exhausted; she needed continual prompting to stay on task. The teacher reported that plaintiff had great difficulty maintaining her focus in the classroom, made noises and talked to herself, and was also very fidgety. Stein-Ballow recommended one weekly thirty minute session of occupational therapy.

Plaintiff also underwent another evaluation by a speech language pathologist in November, 2012. Amy Lamberti noted concerns about plaintiff's phonic awareness and writing skills – she was struggling in school and had difficulty paying attention and completing tasks.

She behaved appropriately throughout the session, spoke clearly, and her speech was within normal limits. Speech language therapy was to be provided twice a week to meet her needs.

On August 22, 2013, Dr. Kalai Murthy, a pediatrician, referred plaintiff to be evaluated for learning disabilities, occupational therapy, and speech therapy. Dr. Ansay referred her for occupational therapy as well. There is no record of any follow up from these referrals.

## II. <u>**Non-Medical Evidence**</u>

An Individualized Education Plan ("IEP"), classifying plaintiff with a learning disability, was to take effect in September, 2012. The IEP incorporated the results of plaintiff's psychoeducational testing from earlier in the year. Plaintiff was to be placed in an integrated co-teaching classroom with special education teacher support services five times per week. Plaintiff's kindergarten teachers had indicated that she was at the pre-kindergarten level in all academic areas. She could not identify letters and their sounds, nor could she work independently or keep pace with instructions. Plaintiff had no problems with her peers or other adults. Some of her teachers attributed her difficulties in adjustment to school to her sporadic attendance. Plaintiff lived in a homeless shelter for part of the prior year – eventually her family moved to Staten Island where she reportedly had better school and healthcare access.

Two of plaintiff's teachers jointly completed a Teacher Questionnaire in October, 2012. They stated that they had known plaintiff for three weeks, she had been absent one full week during that time. The teachers assessed plaintiff's skills to be at kindergarten levels, even though she was in the first grade. They reported plaintiff had very serious problems in acquiring and using information, attending and completing tasks, and interacting and relating with others. Specifically, they stated that plaintiff could not complete tasks independently and that her high distractibility prevented her from acquiring new information. Her teachers reported that plaintiff

5

was easily frustrated and would place herself under the table to avoid doing work that was too hard for her. The teachers referred plaintiff to a smaller class with a higher teacher to student ratio.

Plaintiff's report card, from November, 2012, further corroborated her teachers' assessments. It indicated that she was performing at a below standard level in reading, writing, listening, speaking, science, and personal and social growth. She was approaching the standard in mathematics and social studies. Her teachers commented that it took her too long to settle down to work. Her promotion to the next grade was in question. Plaintiff underwent a series of tests and evaluations in November, 2012, to assess whether she could be promoted. After these evaluations, the IEP team met to discuss plaintiff's educational needs. It recommended that plaintiff be placed in a classroom with a lower ratio of students to teachers, and given speech/language therapy and occupational therapy twice a week, and counseling once a week.

Plaintiff's mother described her impairments as affecting her fairly severely. She testified that her daughter struggles with her reading, does not stay focused, crawls on the floor, and is hyperactive. She also testified that she did not take any medication. She also testified that her daughter had little trouble making friends and enjoyed playing with other children.

Plaintiff testified as well. Her favorite subject was math, she liked to read "a little" and had some difficulty doing so. She also testified that she paid attention in class, even though it was sometimes hard for her to do so, and she listened to her teacher. She stated that she had friends she enjoyed playing with.

### III. Additional Evidence

   A. Evidence Submitted to the Appeals Council

A quarterly progress report from plaintiff's school, dated October, 2012, was submitted. Plaintiff was below grade-level in reading. She rarely did her classwork or homework. She had received a score of zero on both a math and social studies test.

A portion of plaintiff's January, 2014 IEP was submitted to the Appeals Council. Plaintiff was reading at the kindergarten level, and her math skills were at the first grade level. She was to be placed in a special education classroom ten periods a week, along with the counseling and therapy detailed in the 2012 IEP.

A quarterly progress report from plaintiff's school, dated March 25, 2014, stated that plaintiff's current reading abilities were not at an appropriate level. She was approaching the standard in math, social studies, and science. Plaintiff rarely did her homework or wore her school uniform. She did her classwork only at times. An attendance form for the 2013-2014 school year revealed that plaintiff was absent 23 days and late 17 days.

After the relevant period, plaintiff underwent an eye examination in April, 2014, and was prescribed glasses. Dr. Murthy evaluated plaintiff again on April 24, 2014. She stated plaintiff had speech delay, lack of focus, and a learning disability. She referred plaintiff for evaluations for speech and learning disabilities, as well as to the Staten Island Mental Health Society for a developmental evaluation. There is no indication in the record that these evaluations were ever completed.

B.  Additional Evidence Attached to the Complaint

This evidence includes another quarterly progress report from plaintiff's school, this one from the first quarter of the 2013-2014 school year, indicating that plaintiff was performing at above average levels in math and reading.  She rarely did her homework.  Her teacher commented that plaintiff was "very chatty during class, she loses focus, and can't keep on topic because she's talking."

Plaintiff also included a letter from her school dated June 18, 2014, stating that plaintiff had not met the promotional criteria in reading, writing, and math.  Plaintiff was offered a conditional promotion dependent upon her attendance at summer school.  Plaintiff also included an IEP to take effect on March 5, 2015, which indicated plaintiff was to be in a special education classroom.  She interacted effectively with her peers, demonstrated difficulty with grade level auditory and reading comprehension, she enjoyed math, and struggled with accomplishing writing assignments.  Although friendly and social, plaintiff had great difficulty staying focused and remaining on task.  A New York City Public School attendance report from May 27, 2015, indicated plaintiff had an attendance rate of 93% for the prior school year.

**IV.    ALJ's Decision**

In the instant case, the ALJ found a marked limitation in the domain of attending and completing tasks, less than marked limitations in the areas of acquiring and using information, interacting and relating to others, and caring for herself.  The ALJ found no limitations in the domains of moving about and manipulating objects or health and physical well-being.

**DISCUSSION**

Plaintiff raises several points of error: the ALJ failed to adequately develop the record in light of plaintiff's status as a *pro se* minor at the time of her hearing; the ALJ overlooked evidence in the record – like an occupational therapy evaluation; the benefits hearing was not conducted fairly; and the ALJ's credibility determination was flawed because he did not provide adequate reasons for his findings and misstated testimony about whether plaintiff was taking medication. These points essentially distill to an argument that the ALJ's findings are not supported by substantial evidence and the ALJ should have further developed the record.

I. **Standard of Review**

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3) (2006), which incorporate the standards established by 42 U.S.C. § 405(g) (2006). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then her decision must be affirmed. The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla[;][i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from

9

such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

To determine whether a child is eligible for benefits on the basis of disability, the SSA has enacted a three-step process. 20 C.F.R. § 416.924(a). First, the ALJ considers whether a child is engaged in "substantial gainful activity." Id. at § 416.924(b). Next, the ALJ determines whether the child has a "medically determinable impairment that is severe." Id. at § 416.924(c). Finally, when an ALJ finds a severe impairment, as he did here, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d); Kittles ex rel. Lawton v. Barnhart, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). In the case of a child, if an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and a twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d) (1); see also Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004).

Analysis of functionality is performed by consideration of how a child performs in six areas, which are called "domains," described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. Id. A finding of disability is warranted if a "marked" limitation,

defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains, 20 C.F.R. § 416.926a(a), or if one domain is marked by an "extreme" limitation. An "extreme limitation" means "more than marked," and consists of an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). This rating is only "give[n] to the worst limitations." Id.; see also Pollard, 377 F.3d at 190.

**II.    Analysis**

A.  Duty to Develop the Record

An ALJ has an affirmative duty to develop the record, this duty is heightened when the claimant is an unrepresented minor. See Price ex rel. A.N. v. Astrue, 42 F. Supp. 3d 423, 432 (E.D.N.Y. 2014) (internal citation omitted); Marquez on Behalf of Infante v. Shalala, 898 F. Supp. 238 (S.D.N.Y. 1995). Failure to sufficiently develop the administrative record results in the denial to a claimant of a full and fair hearing and is thus grounds for a remand. See, e.g., Encarnacion ex rel. George v. Barnhart, No. 00 Civ. 6597, 2003 WL 1344903, at *4 (S.D.N.Y. March 19, 2003). Encompassed within the ALJ's duty to develop the record is the obligation to obtain medical information, as expressly set forth in both the Social Security Act and the corresponding regulations. See 42 U.S.C. § 423(d)(5)(B); see also 20 C.F.R. § 416.912(d). If an ALJ lacks adequate information with which to make a decision about an applicant's disability, he has the discretion to order a consultative examination to further develop the record. See 20 C.F.R. § 404.1517.

In reviewing the evidence in the record, the ALJ should have realized that the examinations of plaintiff did not shed an adequate light on her limitations. Plaintiff underwent a

11

psychosocial evaluation conducted by Erick Pierre.  The record is devoid of any discussions of who he is, his qualifications to conduct this evaluation, and why this evaluation was conducted.  The record does not explain whether this type of testing is the proper evaluation for someone suffering from both ADHD and a learning disability.

Other than this evaluation, the only other examination by a doctor that is detailed in the record was a consultative examination with Dr. Richard King, a psychiatrist.  Based on the record, it appears that Dr. King conducted an examination of plaintiff.  However, the record is silent about what type of examination or testing he did.  Dr. King suggested that plaintiff could benefit from psychiatric treatment, but there is no further discussion about whether plaintiff received that treatment.  Aside from these two evaluations, neither of which appears especially tailored to plaintiff's specific circumstances, there is little evidence in the record about plaintiff's diagnosis and prognosis.  ADHD is a condition that can be medically evaluated and its severity calculated.  The ALJ should have sought this additional information to assist him in determining the severity of plaintiff's limitations.

Because the ALJ did not adequately develop the record to assess plaintiff's limitations, I am remanding the case for further testing.  See, e.g., Hooper v. Colvin, – F. Supp. 3d –, 2016 WL 4154701, at *14 (S.D.N.Y. Aug. 5, 2016) (ordering a remand because "rather than obtain a consultative examination or seek comprehensive medical opinions . . . the ALJ made [plaintiff's] disability determination based on a record devoid of any truly complete medical opinion.").  Plaintiff must be evaluated in person by a psychologist or psychiatrist who specializes in child ADHD and learning disabilities.

B. Duty to Consider All Relevant Evidence

The ALJ has a duty to consider all relevant probative evidence in the record, and the failure to do so can constitute a basis for remand. See Rodriguez v. Astrue, No. 11 Civ. 7720, 2012 WL 4477244, at *38 (S.D.N.Y. Sept. 28, 2012) (citing Boertlein v. Astrue, No. 08 Civ. 5098, 2011 WL 1326585 at *2-3 (E.D.N.Y. March 31, 2011). Although it is certainly the ALJ's duty "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant," Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983), my independent review of the record leads me to conclude that "the ALJ made several errors in assessing the evidence which may have influenced [his] ultimate finding that plaintiff was not disabled." Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996).

The ALJ assigned "great weight" to the opinion of state agency pediatric medical consultant Dr. M. Malik because he found it was consistent with the record as a whole. Dr. Malik stated that plaintiff had only a marked limitation in the domain of attending and completing tasks. It is unclear from the record what Dr. Malik's qualifications are – does the doctor have any special knowledge of childhood learning disabilities? Of neurological issues like ADHD? Of the prognosis for children dealing with these issues? Dr. Malik's report is extremely sparse and it does not appear Dr. Malik met with plaintiff in making this evaluation. Certainly, from a lay perspective, the reports from plaintiff's teachers raise the issue that she may have an extreme limitation in either acquiring information and in attending and completing tasks. If a consultant deems that either of these domains is merely "marked," the record should reflect why he thinks it is marked rather than extreme.

The ALJ's conclusion that Dr. Malik's opinion was consistent with the record can only be reached by discounting or ignoring other evidence in the record. The ALJ assigned only "some weight" to the opinion of Dr. King, a psychiatrist who actually met with plaintiff and diagnosed her with ADHD and a learning disability. Dr. King, as described earlier, found that plaintiff had serious behavioral and intellectual difficulties. He noted that she had "an extremely poor" concentration span. Even though Dr. King actually met with plaintiff, his opinion was assigned less weight than Dr. Malik's – it is unclear why. An "ALJ need not recite every piece of evidence that contributed to the decision," but that assumes that "the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Based on the ALJ's opinion, I cannot understand why Dr. Malik's opinion was given more weight than Dr. King's.

Additionally, the ALJ discounted the opinions of plaintiff's teachers who said that plaintiff had a very serious problem in all functional categories based on their observations of her in a classroom setting. The ALJ assigned "light weight" to this opinion because it was "inconsistent with school records and the ratings are too extreme." The teachers' opinion is hardly inconsistent with the school records – at the time of the teachers' evaluation, plaintiff was in danger of being held back and was consistently performing below grade level in certain subjects. By the time the ALJ was deciding the case, plaintiff was actually repeating the first grade and was continuing to have very serious problems in school. And although teachers are not doctors, they are frequently the professionals who both have the most exposure to the child and the best basis for drawing comparisons to a normally developing child. See Stanley v. Comm'r of Social Sec., 32 F. Supp. 3d 382, 394 (N.D.N.Y. 2014); SSR 06-03p, 2006 WL 2329939, at *6.

14

The ALJ also failed to take into account the occupational therapist's report from November, 2012. The report was done to address concerns about plaintiff's poor academic performance in the first grade, low attention span and high distractibility, and her much delayed fine motor skills. The Commissioner contends that this evaluation does not relate to plaintiff's ADHD and merely addresses concerns about how her vision impacted her academic performance. After reviewing the report, I disagree. Although the report addresses plaintiff's vision issues, it contains a full evaluation of her behavior during testing that provides valuable input into how distractible she was. The ALJ's failure to address this report at all means that he failed to consider all relevant probative evidence in the record.

The ALJ also appears to have been under the mistaken impression that plaintiff was taking medication for her ADHD, even though her mother clarified that she was not and the record so reflects. In assessing plaintiff's ability to attend and complete tasks, the ALJ wrote that the "claimant feels better when she takes her medication." Later in his opinion, however, the ALJ noted that plaintiff's mother said she was "on no medication." This inconsistency within the ALJ's own findings is troubling, especially in light of the other issues I have highlighted. On remand, the ALJ is directed to clarify this point and indicate whether or not plaintiff taking medication impacts his analysis.

The individuals who interacted with plaintiff on a routine basis – her teachers, school officials, her therapists, and her mother – all provided evidence that plaintiff had an extremely difficult time focusing and maintaining attention. The ALJ cannot simply ignore their opinions because they disagree with Dr. Malik. Because the ALJ overlooked certain probative pieces of evidence and failed to satisfactorily explain why he ignored others, I remand on this basis as well.

## **CONCLUSION**

Plaintiff's [22] motion for judgment on the pleadings is granted and the Commissioner's [15] cross-motion is denied. The case is remanded so that the ALJ may have plaintiff evaluated in person by a psychologist or psychiatrist who specializes in child ADHD and learning disabilities. The ALJ is also directed to clarify whether or not plaintiff was taking medication for her ADHD and should indicate how this impacts his analysis. Finally, the ALJ should also consider whether he overlooked probative evidence already contained in the record, such as the occupational therapist's report, as well as any relevant new evidence submitted to the appeals council or attached to the complaint.

**SO ORDERED.**

                                                                                      U.S.D.J.

Dated: Brooklyn, New York
        August 16, 2016